UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INC., COUNSELING SERVICES OF NEW YORK, LLC, and DR. FERDINAND B. BANEZ;<br><br>Defendants. | 1:15-cv-08992-LGS |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES


Jeffrey M. Norton
Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, New York 10001
Telephone: (212) 619-5400
Facsimile: (212) 619-3090
jnorton@nfllp.com


*Counsel for Plaintiff*


Dated: July 27, 2016

Plaintiff Jane Doe ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to the respective motions for fees and costs submitted by defendants Quest Diagnostic Inc. ("Quest"), Counseling Services of New York, LLC ("CSNY"), and Dr. Ferdinand B. Banez ("Banez") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants' motions for fees lack merit, legal authority, and are otherwise improper for a number of reasons.[1] First, Defendants fail to cite a single analogous case or any other authority supporting atypical fee shifting in a similar circumstance, let alone a case where, as here, a court has already determined: (a) a plaintiff was diligent and timely in seeking dismissal; (b) she had a legitimate (non-vexatious) motive for seeking dismissal without prejudice; (c) the litigation had not progressed materially such that defendants had incurred significant expense; and (d) defendants would not suffer any substantial prejudice as a result of a dismissal. In fact, the single, substantive case relied upon by Defendants, *Baldanzi v. WFC Holdings Corp.*, 2010 WL 125999, *4 (S.D.N.Y. Jan. 13, 2010),[2] involved a three-year-long litigation where a court found specifically that the plaintiffs lacked diligence in both litigating the case and seeking relief under Rule 41(a)(2), and further held that plaintiffs presented a "dubious" basis for their need for dismissal. Even though the court in *Baldanzi* did ultimately award fees to defendants, it limited the fee award specifically to those fees incurred opposing *plaintiffs'* motion to dismiss and for

---

[1] At the outset, setting aside the Court's order granting leave for Defendants to file motions for fees, no motion for dismissal without prejudice under Rule 41(a)(2) was ever formally made (or fully briefed) by the Plaintiff which would provide a legal basis for fees. In fact, as noted in the Court's Order of June 29, 2016 ("Order") (Doc. No. 60), following the discussions had at the pre-motion conference on April 19, 2016, the Plaintiff opted instead to conditionally withdraw her opposition to Quest's motion to dismiss under Rule 12(b)(1) (*see* Plaintiff's letter of April 21, 2016, Doc. No. 51), subject to the Court's not retaining supplemental jurisdiction over claims against the non-moving Defendants. Although it is not clear why the Court elected to rule on Rule 41(a)(2) grounds, for the purpose of this opposition and without waiving any rights as to the propriety of the underlying motions, Plaintiff will respond to Defendants' arguments as if a formal motion had been filed.

[2] Quest Mem. at 4, CSNY, Banez Mem. at 2.

time spent opposing plaintiffs' attempts to delay discovery and postpone class certification motion practice. *Id* at *5.

Ironically, while touting *Baldanzi* as "instructive," the case actually undermines Defendants' request for fees. Here, Quest is the one that first sought dismissal under Article III (*not* Plaintiff), and the Court has already determined that her seeking voluntary dismissal in response to that motion was both diligent and for a proper purpose. Further, even assuming, *arguendo*, that Defendants have a basis to seek fees (and they do not), *Baldanzi* makes clear those fees should be limited strictly to time dedicated to briefing an opposition to Plaintiff's motion under Rule 41(a)(2) (a motion never formally made or briefed in this case) and dealing with Plaintiffs' efforts to delay litigation (a circumstance decidedly absent here). Thus, if Defendants were truly *instructed* by Judge Swain's reasoning in *Baldanzi*, they would have recognized the lack of merit in their arguments or, at a minimum, seen the providence of limiting their fee requests to time spent responding to Plaintiff's pre-motion letter as opposed to seeking an obscene amount (*i.e.*, **over $80,000.00** collectively) from her for all litigation efforts to date. However, even with that limitation, the motions have no merit and should be denied.

The want of legal authority, coupled with the gross amount sought by Defendants, reveals the true purpose of these motions: to further intimidate the Plaintiff so she will cease her efforts in pursuing claims arising from a serious breach of her (and hundreds of others) personal and medical privacy. For these reasons, and those argued herein, Defendants' motions for fees should be denied.

## BACKGROUND

On November 16, 2015, Plaintiff initiated this action by filing a complaint alleging that, for at least a year, APS Marketing Group ("APS"), a marketing firm located in Brooklyn, New

York, which is neither a medical service provider nor an agent or associate of any party to this action, nor is otherwise authorized to receive protected personal medical and health information, began receiving private medical documents via facsimile that were intended for Quest. Compl. ¶¶ 19-21. These facsimiles were being sent by various medical providers throughout New York City, including Defendants CSNY and Banez. Compl. ¶ 23. The Complaint alleges that Defendants were on notice of these erroneous transmissions but did nothing to stop them or take steps to protect those (including Plaintiff) whose records were unlawfully disclosed. Compl. ¶¶ 24-27.

Thereafter, CSNY and Dr. Banez answered the Complaint (Doc. No. 32), while Quest filed a motion to dismiss contending, *inter alia*, that Plaintiff lacked standing to sue under Article III. (Doc. No. 33)  Plaintiff filed her opposition to Quest's motion on March 22, 2016 (Doc. No. 50), and Quest filed its reply on April 1, 2016 (Doc. No. 53). In the interim, on March 31, 2016, after fully considering Quest's motion and prior to the motion being fully briefed, Plaintiff filed a letter requesting a pre-motion conference on an anticipated motion to dismiss the action voluntarily, and without prejudice. (Doc. No. 51)  Following submissions from the Defendants (Doc. 57 and 58), this Court held a pre-motion conference on April 19, 2016.  At the conference, the parties and the Court discussed, *inter alia,* Plaintiff's concern (and basis for Rule 41 motion) that a dismissal on Rule 12(b)(1) grounds could result in "a situation where Article III standing was found lacking with respect to Quest, requiring her to litigate against Quest in state court, while litigating against CSNY and Dr. Banez in federal court." (Order at 2)  During the conference, Plaintiff was asked by the Court whether, in lieu of a Rule 41(a)(2) motion, she would consider withdrawing her opposition to that portion of Quest's motion seeking dismissal under Rule 12(b)(1) subject to the Court declining to retain supplemental jurisdiction over the

3

claims against the non-moving Defendants. Plaintiff agreed that this would be an acceptable result and agreed further to submit a letter memorializing the same.

On April 21, 2016, Plaintiff filed her letter agreeing to withdraw her opposition to Quest's motion on Rule 12(b)(1) grounds conditioned on the Court not retaining supplemental jurisdiction over the claims against CSNY and Banez. (Doc. No. 58). On the same date, Quest responded to Plaintiff's letter acknowledging her conditional withdraw of opposition but seeking a substantive ruling on injury-in-fact and lack of traceability.[3] (Doc. No. 59). On June 29, 2016, this Court entered its Order granting Plaintiff's motion to dismiss without prejudice and granting leave for Defendants to file a motion seeking fees and costs.

## ARGUMENT

### A. Rule 41(a)(2) Does Not Provide For Fee Shifting

Like courts throughout the country, this Court follows the American Rule, which holds that the prevailing party is not entitled to recover attorneys' fees and costs from the loser, absent special circumstances or statutory authorization. *See Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Despite Defendants' motions for fees and costs purportedly made pursuant to Fed. R. Civ. P 41(a)(2), the rule does not provide for shifting of fees and costs. To be clear, courts in this circuit repeatedly have held that in actions that have been voluntarily dismissed without prejudice, fee awards are not automatic. *See e.g. Global One Commc'ns World Holding B.V. v. Gaul,* 2008 WL 2783429, at *3 (N.D.N.Y. July 16, 2008). Rather, a court may impose attorney's fees and costs under Rule 41(a)(2) only *"*when justice so demands.*" Hinfin Realty Corp. v. Pittston Co.*, 2014 WL 1653209, at *2 (E.D.N.Y. Apr. 23, 2014). In determining whether to award fees, courts in this Circuit take into consideration whether: (a) Plaintiff

---

[3] Plaintiff rejects the notion that she would not be able to establish injury-in-fact or traceability and believes that the standards for standing under state law are not the same as under Article III.

demonstrated bad faith or vexations conduct; (b) the stage of the litigation at the time dismissal was sought; and (c) the efforts expended by the Defendants prior to the dismissal. None of these factors support a fee award here.

### B. The Court Has Already Rejected Defendants' Argument That Plaintiff Acted in Bad Faith or Vexatiously in Seeking Dismissal

Fee and cost shifting awards have been granted in cases where plaintiff sought voluntary dismissal without prejudice only where defendants have demonstrated that a plaintiff has commenced or conducted an action "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Dow Chem. Pac. Ltd. v Rascator Mar. S.A.*, 782 F2d 329, 344 (2d Cir 1986), quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974). Moreover, there must be "clear evidence" of bad faith before a court will award fees and costs. *Id.*

Here there has been no showing of bad faith or vexatious conduct; indeed, this Court has already held the opposite. In this Court's Order dismissing this action without prejudice, the Court wrote that Plaintiff provided an "adequate and reasonable explanation for the need to dismiss, and in that regard, the motion is not vexatious." (Order at 5) Furthermore, while granting leave to file motions for fees and costs, the Court cautioned Defendants that fee-shifting awards generally are not appropriate in the American justice system and that "no bad faith has been shown." *Id.* For these reasons, such an award is inappropriate here.[4]

---

[4] Ironically, it is Defendants who are engaging in vexatious conduct by filing these motions for an improper purpose (*i.e.*, to intimidate the Plaintiff), that are unsupported by any existing law or reasonable extension thereof (including the law they rely upon), and seeking remedies far beyond anything that would be allowable or justifiable even assuming sufficient authority existed. *See* Fed. R. Civ. P. 11(b). Under these circumstances, it is Plaintiff, rather than Defendants, who should be entitled to fees for having to oppose Defendants' frivolous motions.

### C. Because Plaintiff Was Diligent In Seeking Voluntary Dismissal Early In The Litigation, An Award of Fees is Inappropriate

The development of the litigation is a "proper facto[r] to be evaluated in the event terms are to be imposed as a condition of granting a motion for voluntary dismissal." *Louis v. Bache Grp., Inc.,* 92 F.R.D. 459, 461 (S.D.N.Y. 1981). For example, "[w]here dismissal is sought immediately prior to the commencement of trial or after a trial has actually commenced, costs and fees may be appropriate." *Gap, Inc. v. Stone Int'l Trading, Inc.*, 169 F.R.D. 584, 589 (S.D.N.Y.), *aff'd*, 125 F.3d 845 (2d Cir. 1997) (*internal citations omitted*).

*Louis v. Bache Grp., Inc.* is instructive. In that action, a motion for voluntary dismissal without prejudice was made after a year of litigation, the completion of discovery, and full and extensive pretrial proceedings. *Id.* at 461. There, the court did award defendants a small portion of their legal fees yet emphasized that, the well-advanced stage of the proceedings notwithstanding, to do otherwise "would be contrary to the American practice of not imposing upon an unsuccessful litigant the trial expenses of the successful adversary." *Id.* at 462. As discussed in this Court's Order, this litigation is "in its early stages and no discovery has taken place." (Order at 5) Notably, this Court held that Plaintiff acted diligently in seeking voluntary dismissal because she filed her motion "at the time she first realized that she could be forced to litigate in two separate courts," "before Quest's motion was fully briefed," and that she "did not lack diligence." *Id.* at 4. Accordingly, the imposition of fees and costs on Plaintiff is entirely improper.

### D. Defendants Will Be Able to Reuse their Work in a Second Action, Therefore a Fee Award is Inappropriate

Defendants contend that the purpose of a fee award is to reimburse a defendant for litigation costs incurred in consideration of the risk faced by the defendant that the same suit will

be refilled and result in the imposition of duplicative expenses. *See Colombrito v. Kelly,* 764 F.2d 122, 134 (2d Cir. 1985).  However, voluntary dismissal without prejudice, where a subsequent action brought by plaintiff would involve grounds that "likely will be the same, and much of the work already done … will either be unnecessary or easy to duplicate," weighs against the award of fees and costs. *Hinfin Realty* at *2.

      Here, the vast majority of the work for which Defendants are seeking reimbursement is for services that can and will be used in Plaintiff's state court case.  Therefore, any "concern that the defendants will face duplicated expenses is minimized by the fact that…defendants can use the same preparation and expenses they have undertaken in this case in a subsequent action." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 125 (S.D.N.Y. 2000).  Particularly in light of the fact that *Defendants are seeking tens of thousands of dollars from Plaintiff* for work unrelated to the Rule 41(a)(2) issue – work they will reuse when the case is re-filed -- belies their motives for making this motion; ostensibly, as a mechanism of intimidation. Moreover, had Quest prevailed in its Rule 12(b)(1) motion, Plaintiff would be in the exact same position she is now (at least vis-à-vis Quest), with a claim dismissed without prejudice. *See Cangemi v. United States*, No. 12-CV-3989(JS)(SIL), 2016 WL 915173, at *8 (E.D.N.Y. Mar. 7, 2016) (citing *JetBlue Airways Corp. v. CopyTele Inc.*, No. 15-CV-0086, 2015 WL 6161774, at *1 (2d Cir. Oct. 21, 2015) ("'Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.'") (internal citations omitted)). Thus, it stands to reason that dismissal under Rule 41(a)(2) has not caused Defendants to incur *any* expense they would not have expended in the absence of the Court's Order.[5] Accordingly, Defendants' motions should be denied.

---

[5]    Quest argues that it will not be able to reuse its Article III research in a subsequent state court action. However, this argument is a red herring. Quest elected to make an Article III standing argument in order

### E. Defendants' Legal Authority Fails To Support Their Motions

Defendants Quest, CSNY and Banez all attempt, albeit erroneously, to analogize the present action to Judge Swain's decision in *Baldanzi,* 2010 WL 125999, **1-5**. In that case, plaintiffs' motion for a voluntary dismissal without prejudice was granted and defendants were awarded fees. However, in contrast to the present matter, the plaintiff therein failed to meet all the *Zagano* factors, particularly with regard to diligence and motive for dismissal. Indeed, Judge Swain found that the plaintiffs were not diligent in pursuing the action having "waited until the last business day before the close of the discovery period before making their initial discovery requests to Defendant's counsel" and having "moved for dismissal after the court requested, further substantiation of their request to extend the class discovery and class certification motion deadlines by three months." *Id.* at *4. Judge Swain found further that plaintiffs' justification for needing to dismiss the complaint (after three years) rather than moving for class certification pursuant to the court's deadline was "dubious." *Id.* Here, the Court has already determined that Plaintiff satisfied all the *Zagano* factors and, specifically, that her request for dismissal was diligent, for a proper and reasonable purpose, and not prejudicial to Defendants.  (Order at 5).

Critically, Defendants ignore completely that while Judge Swain granted attorneys' fees and costs, she specifically limited the award to compensable time dealing with plaintiffs' discovery delays and briefing on *plaintiffs'* motion to dismiss. *Id.*  Here, the Court has already ruled on Plaintiff's diligence and it was Quest that initially moved to dismiss (not the Plaintiff). Indeed, the *only* reason Plaintiff sought voluntary dismissal was because of Quest's Rule

---

to get Plaintiff's action dismissed from federal court. Unlike in *Baldanzi*, here Plaintiff did not make standing an issue – she only acted in response to it. Had Quest prevailed on its motion, Plaintiff would be in the same position - free to bring her case in state court using New York procedural law. Neither withdrawing opposition to Quest's Article III argument nor voluntarily dismissing her case without prejudice would alter this fact. In addition, Quest remains free to seek removal once this case is refiled in state court and will undoubtedly rely on the same Article III research when assessing whether to so the same.

12(b)(1) motion and the possibility that she might face a situation of having to pursue the same case in two separate courts. Despite calling *Baldanzi* "instructive," Defendants ignore the most essential aspects of the opinion by seeking over $80,000 in fees, not limited to Plaintiff's pre-motion letter, but encompassing all work to date. Accordingly, *Baldanzi* does not support a fee award to Defendants.

Similarly, Defendant Quest's reliance on *Colombrito v. Kelly*, 764 F.2d 122 (2nd Cir. 1985), is misplaced. *Colombrito* concerned the award of attorney's fees and costs with regard to a voluntary dismissal *with* prejudice. *Id.* at 134. While a passing reference is made to the potential for attorneys' fees in motions to dismiss without prejudice, the opinion deals squarely with the appropriateness of a fee-shifting award where a "litigant had made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." *Id.* at 135. Ultimately, the Court denied the motion for fees finding no basis in the law to award the same. Even if *Colombrito* was substantively or legally relevant to the issues before this Court, it would still support a ruling that Defendants are not entitled to fees here.

## CONCLUSION

For the foregoing reasons, Defendants' motions for attorneys' fees and costs should be denied.

Dated: July 27, 2016                                NEWMAN FERRARA LLP

                   *s/ Jeffrey M. Norton*
                 Jeffrey M. Norton
                 jnorton@nfllp.com
                 1250 Broadway, 27th Floor
                 New York, New York 1001
                 t. (212) 619-5400

                 *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Jeffrey M. Norton, an attorney admitted to practice in the State of New York and this Court, hereby certify that on the 27th day of July 2016, I caused service of the foregoing Memorandum of Law to be made by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action.

Dated: New York, New York
       July 27, 2016

                                                            *s/ Jeffrey M. Norton*
                                                            Jeffrey M. Norton