```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                              :
JANE DOE,                                     :
                              Plaintiff,      :
                                              :          15 Civ. 8992 (LGS)
              -against-                       :
                                              :          MEMORANDUM
QUEST DIAGNOSITCS, INC., et al.,              :          OPINION AND ORDER
                              Defendants.     :
                                              :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/2017

LORNA G. SCHOFIELD, District Judge:

Anonymous Plaintiff Jane Doe filed this purported class action against Quest Diagnostics Inc. ("Quest"), Counseling Services of New York, LLC ("CSNY"), and Dr. Ferdinand B. Banez ("Banez") (collectively, "Defendants"), on November 16, 2015, alleging state law claims of negligence, violation of New York General Business Law § 349, and fraud, for the faxing of medical information to the wrong fax number. Defendant Quest moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed below, Quest's motion to dismiss is granted.

I.  BACKGROUND

    A.  Procedural History

Familiarity with the facts and procedural background of this case are assumed. A summary of the relevant chronology is as follows: Defendants CSNY and Banez answered the Complaint but did not assert any counterclaims. Defendant Quest, in lieu of an answer, filed a motion to dismiss for lack of Article III standing and failure to state a claim. Plaintiff filed an opposition to the motion, but the day before Quest filed its reply, Plaintiff filed a letter seeking voluntary dismissal of the case pursuant to Federal Rule of Civil Procedure 41(a)(2), and stating

her intention to refile in state court.  The three-page, single-spaced letter outlined the standards for voluntary dismissal and why Plaintiff believed that it was warranted.  Defendants opposed dismissal in two letters of similar length and sought, in the alternative, attorneys' fees for duplicative expenses anticipated upon Plaintiff's refiling the case.

On April 19, 2017, the Court held a conference to discuss Plaintiff's request for voluntary dismissal.  Plaintiff stated that she sought dismissal to avoid the risk of having to litigate against one Defendant in state court and others in federal court.  The parties discussed whether voluntary dismissal would be appropriate.  The Court also asked whether Plaintiff would be willing to decline to oppose Quest's motion to dismiss, permitting the Court to dismiss on standing grounds.  Plaintiff responded that "[t]hat would be a fine result as well."

Plaintiff's resulting letter stated that Plaintiff was willing to withdraw her opposition to Quest's Rule 12(b)(1) motion, but with an additional condition not stated at the conference -- she would not "waiv[e] any rights or conced[e] Quest's arguments as to whether Plaintiff had met her burden for Article III standing."  The letter was agnostic as to whether dismissal should be granted pursuant to Rule 12(b)(1) or Rule 41(a)(2), noting that in either case, "plaintiff procedurally would be in the same position."  Quest argued that the two types of dismissal were not equivalent, and that Plaintiff should not be able to avoid a final, jurisdictional dismissal under Rule 12(b)(1) and assessment of fees by obtaining a voluntary dismissal under Rule 41(a)(2).

With the parties disagreeing about the proper form of dismissal, an Opinion and Order was issued in June 2016 granting dismissal without prejudice pursuant to Rule 41(a)(2), and inviting Defendants to file a motion for attorneys' fees and costs.  Defendants did so in July 2016, and Plaintiff opposed.  In a footnote to her opposition, Plaintiff noted that even though she

had not formally made or briefed a Rule 41(a)(2) motion for dismissal without prejudice, she would "respond to Defendants' arguments as if a formal motion had been filed." Plaintiff opposed the motion on the grounds that an award of fees was not appropriate under Rule 41(a)(2); she did not seek reconsideration of the Court's June 2016 Opinion. In October 2016, Plaintiff was given the choice to voluntarily dismiss without prejudice and pay Quest $32,342.90 and CSNY and Banez $675.00 in fees, or to dismiss with prejudice. Plaintiff sought reconsideration of the October 2016 Order, arguing that she never formally moved to voluntarily dismiss under Rule 41(a)(2). Plaintiff's motion failed to meet the standard for reconsideration, and the motion was denied in January 2017. In January 2017, Plaintiff filed a letter stating that she would not pay Defendants' fees.

### B.   Factual Allegations

The following facts are drawn from the Complaint and accepted as true, but no inferences favorable to plaintiffs are drawn for purposes of the Rule 12(b)(1) motion to dismiss. *See J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

Quest, a company providing diagnostic medical testing, possessed a facsimile number similar to that of APS, a Brooklyn-based marketing agency. Only their area codes differed. For at least a year, APS has received "thousands" of medical forms from medical facilities and providers containing private medical information intended for Quest. APS employees have contacted medical providers, including CSNY and Banez, and Quest about such misdirected faxes, but they continued to receive them.

In August 2015, Plaintiff began treatment at CSNY, which included clinical tests such as urine testing. On October 14, 2015, Banez signed a document containing Plaintiff's personal information and medical data. On October 15, 2015, CSNY and Banez faxed the document to

3

APS, although the directions on the form stated that it should be faxed or mailed to Quest. Plaintiff seeks declaratory relief, damages, court costs and attorneys' fees based on this misdirected fax.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b)(6) provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any [ ] reason that justifies relief." "While normally such relief is sought by motion of a party, nothing forbids the court to grant such relief *sua sponte*." *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (internal citation omitted).

On a motion to dismiss for subject matter jurisdiction, courts "must accept as true all material factual allegations in the complaint, but [] are not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S.*, 386 F.3d at 110. "While the standard for . . . standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the motion is facial, meaning that it is based solely on the allegations in the complaint and attached exhibits, "the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (internal quotation marks omitted). In the case of a fact-based Rule 12(b)(1) motion, the district court may consider evidence beyond the pleading. *Id.* at 57.

### III.    DISCUSSION

####    A.    Reconsideration of Orders Granting Rule 41(a)(2) Voluntary Dismissal and Awarding Fees

The Court vacates its prior orders to grant Plaintiff voluntarily dismissal pursuant to Rule 41(a)(2) and award fees *sua sponte*.  The Court has the power to reconsider and modify its prior orders pursuant to Rule 60(b).  *Fort Knox Music Inc.*, 257 F.3d at 111.  Reconsideration is warranted here where Plaintiff stated that she never made a Rule 41(a)(2) motion for voluntary dismissal.  Although not cited by either party, the Second Circuit has held that "fundamental fairness requires interpreting Rule 41(a)(2) to afford the plaintiff an opportunity to withdraw his motion and proceed with the litigation in the event that a district judge proposed to convert a voluntary dismissal to one with prejudice."  *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988).  Courts in this district have permitted parties the opportunity to withdraw their motion to voluntarily dismiss without prejudice where the litigant deems to be too onerous any terms and conditions associated with the dismissal.  *See Gravatt*, 845 F.2d at 56 (noting that three other circuits permit a plaintiff moving under Rule 41(a)(2) such an opportunity); *Spirit Realty, L.P. v. GH & H Mableton, LLC*, No. 15 Civ. 5304, 2017 WL 24782 at *7 n.6 (S.D.N.Y. Jan. 2, 2017); *Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*, No. 03 Civ. 9623, 2005 WL 236515, at *1 (S.D.N.Y. Feb. 1, 2005).  The Court construes Plaintiff's claim[1] that she never made a motion for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) as a request to withdraw her

---

[1] Plaintiff's actions smack of wanting to have it both ways – wanting a Rule 41(a)(2) voluntary dismissal provided no fees were awarded and wanting a Rule 12(b)(1) dismissal insofar as she could avoid having to concede actual lack of Article III standing.  Plaintiff's posturing to avoid any real decision on the merits has wasted both the parties' and judiciary's resources.

motion.[2]

Accordingly, the action returns to litigation.  Before the Court is a fully briefed motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### B.      Rule 12(b)(1) Motion to Dismiss

Plaintiff has not alleged facts sufficient to establish Article III standing.  "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Clapper v. Amnesty Inter. USA*, 133 S. Ct. 1138, 1146 (2013).  To establish Article III standing, a plaintiff "bears the burden" of establishing an injury-in-fact:  "an invasion of a legally protected interest which is (a) concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (b) "fairly . . . trace[able]" to the defendant's conduct; and (c) where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

In evaluating whether the alleged injury is concrete and particularized, courts assess whether the alleged injury has affected the party bringing the suit "in a concrete and personal way."  *Id.* at 581.  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal way.'"  *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016).  To be concrete, an injury "must actually exist."  *Id.*  In other words, it must be "'real' and not 'abstract.'"  *Id.*  Intangible harms,

---

[2] This construction is supported by counsel's statements.  During a conference on January 5, 2017, given the hypothetical choice between Rule 41(a)(2) dismissal with fees, dismissal without fees but with prejudice, or an adjudication of Quest's Rule 12 motion to dismiss, Plaintiff's counsel stated that he "would be happy having [Quest's] initial motion [to dismiss] considered and opinion rendered on that motion."

although not as easily recognizable as concrete injuries, may satisfy this standard.  In examining whether an intangible harm is concrete, a court should consider whether Congress has "identif[ied] and elevat[ed]" the intangible harm alleged.  *Id.* at 1549.  "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."  *Id*.  Still, Congress' passage of a statute granting a person a statutory right "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement."  *Id*.  For example, "a bare procedural violation, divorced from any concrete harm," does not satisfy Article III's injury-in-fact requirement.  *Id*.

Here, Plaintiff makes no factual allegations of injury.  Plaintiff's only statements of harm are conclusory -- not factual -- statements, which are insufficient to constitute a concrete, real, and not abstract injury.  For example, Plaintiff alleges that "Quest's conduct directly, foreseeably, and proximately caused cognizable injury to Plaintiff," and that Quest's violations "have damaged Plaintiff, and others similarly situated, and threaten additional injury if the violations continue."  Plaintiff does not, for example, allege that her medical information was misused or that she suffered from any other identifiable harm.  Such conclusory allegations are insufficient to confer Article III standing.

Plaintiff argues that a privacy violation alone can constitute injury.  This argument is not without support, *see, e.g., Gambles v. Sterling Infosystems, Inc.*, No. 15 Civ. 9746, 2017 WL 589130, at *8-*10 (S.D.N.Y. Feb. 13, 2017).  However, the Complaint does not plead that Plaintiff suffered a privacy injury.  Nor does it plead that any injury Plaintiff might have suffered is "fairly traceable to the defendant's conduct."  *Lujan,* 504 U.S. at 560-61.  First, Quest -- as opposed to CSNY or Banez -- did not disclose the harmful medical information that might have caused any such injury; only CSNY or Banez might have done so because they faxed Plaintiff's

private medical information to the wrong number.  Second, any injury is not fairly traceable to Quest's alleged misconduct, despite the Complaint's conclusory allegation that "Quest breached its duty by failing to take reasonable steps to stop and/or prevent further privacy violations from occurring" and thereby "proximately caused" the release of Plaintiff's information.  Even if Quest had a duty to change its facsimile number (which is doubtful under the circumstances), the Complaint does not, and cannot, plausibly allege that doing so would have prevented medical providers from misdialing another number.  The Complaint's allegations and theory of liability are insufficient to confer standing upon Plaintiff.

Plaintiff further argues that she suffered an injury sufficient to confer Article III standing based on the increased risk of harm to her from the release of her medical information.  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes -- that the injury is *certainly* impending." *Clapper*, 133 S. Ct. at 1147 (internal quotation marks omitted).  "[A]llegations of *possible* future injury are not sufficient." *Id.* (internal quotation marks omitted) (emphasis in original).  Here, Plaintiff's future risk of injury from a fax showing that she underwent certain clinical tests is too conjectural, hypothetical, and lacking imminence to confer standing.  The Complaint alleges that her information was faxed to APS and the date on which it was faxed.  APS employees proactively alerted medical providers, including CSNY and Banez, that medical information was improperly sent to them.  Nothing in the Complaint plausibly alleges that the risk of harm was even probable.  Inadvertently sending information to a disinterested wrong number does not present even the degree of risk of exposing a plaintiff's private information to unknown hackers who are actually seeking the information. *See, e.g,. Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 582-83 (E.D.N.Y. 2015) (no

standing where Plaintiff alleges increased risk of future harm after credit card information stolen from store) (appeal pending); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *2, *7 (S.D.N.Y. June 25, 2010) (no standing where plaintiffs "suffered little more than an increased risk of future harm" following theft of sensitive personal information) (collecting cases).

As the Complaint fails to allege any harm to Plaintiff that is concrete, actual or imminent, or fairly traceable to Quest, Plaintiff's claims against Quest are dismissed for lack of Article III standing.

## IV.   CONCLUSION

The Orders dated June 29, 2016, and October 3, 2016, are VACATED.  For the foregoing reasons, Quest's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.  The claims against Quest are dismissed.  The Clerk of Court is directed to close the case.

SO ORDERED.

Dated:  March 23, 2017
New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

9